**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-12-0000523**
**17-DEC-2013**
**08:58 AM**

NO. CAAP-12-0000523

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF MA, H

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 09-12410)

SUMMARY DISPOSITION ORDER
(By: Nakamura, Chief Judge, Foley and Leonard, JJ.)

Mother-Appellant (**Mother**) appeals from the Order Terminating Parental Rights, entered on May 14, 2012 by the Family Court of the First Circuit,[1] (**Family Court**) that terminated her parental and custodial rights over her children, MA and H, and awarded Petitioner-Appellee State of Hawai'i Department of Human Services (**DHS**) with permanent custody over MA and H.

On appeal, Mother contests the following findings of fact and conclusion of law and argues that:

1. Finding of Fact (**FOF**) 96 was erroneous in finding that DHS failed to provide every reasonable opportunity to succeed because the service plan failed to include a referral to a dual diagnosis treatment;

2. FOF 98 was erroneous in determining that Mother is not presently willing or able to provide a safe family home even with the assistance of a service plan, because Mother's current participation in the dual diagnosis treatment along with her

---

[1] The Honorable Matthew Viola presided.

trial testimony reflect her willingness to provide a safe family home and comply with services;

3. FOF 118 was erroneous in finding that DHS exerted reasonable and active efforts to reunify, where DHS failed to make a referral to a dual diagnosis treatment plan, which Mother entered on her own;

4. FOF 121 was erroneous in determining that each of the service plans were fair, appropriate, and comprehensive, because the service plans failed to include the dual diagnosis treatment plan; and

5. Conclusion of Law (**COL**) 3 was wrong in concluding that Mother is not presently able to provide the children with a safe home even with the assistance of a service plan, based on the foregoing erroneous findings.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve Mother's points of error as follows:

Mother's points of error all stem from her assertion just prior to trial that dual diagnosis treatment, which she contends was not offered or provided by DHS in-service plans, was pivotal.

A. <u>Reasonable and Sufficient Efforts to Succeed and to Reunify through Appropriate and Comprehensive Service Plans (FOFs 96, 118, & 121)</u>

In <u>In re Doe</u>, 100 Hawai'i 335, 338, 343-44, 60 P.3d 285, 288, 293-94 (2002), the mother contended that she was denied a reasonable opportunity to reunify through the service plan where DHS was aware that mother had a severe mental problem and only provided mother with phone numbers of counselors, with no follow up. The Hawai'i Supreme Court concluded, however, that no substantial prejudice arose to mother, as required under Rule 61 of the Hawai'i Family Court Rules (**HFCR**),[2] for disturbing the

_____

[2] HFCR Rule 61, entitled Harmless Error, states:

No error in either the admission or the exclusion of

(continued...)

family court's order, where mother demonstrated that she was unwilling to participate in DHS services, and where mother never contested the service plan and never requested additional services until the start of trial, which was not timely because, despite her mental condition, Mother was represented by counsel who could have contacted DHS.  Id.

1.  Service Plans.  Mother had three family service plans involving MA and H that ordered substantially the same services.

The October 14, 2009 family service plan required substance abuse assessment at Hina Mauka, random drug screening, continuation of regular therapy sessions with Dr. Jaime Horton until clinically discharged, parenting education, a psychological evaluation, that Mother establish stable housing, and cooperation with the DHS social worker.  Mother stipulated to the October 14, 2009 service plan.

The November 3, 2010 family service plan included Hina Mauka substance abuse assessment and random drug screening, attendance at regular therapy sessions until clinically discharged, Comprehensive Counseling and Support Services parent education, psychological evaluation after Mother demonstrates 90 days sobriety, establishing stable housing, and cooperation with the DHS social worker.

The September 20, 2011 service plan included Mother's services of substance abuse assessment and treatment, individual therapy, family therapy, psychiatric services, random UAs, parenting education, psychological evaluation, good stable housing, and cooperating with the social worker.  Upon inquiry from the Family Court regarding whether Mother was willing to do

---

[2](...continued)
evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.  The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

the services in the September 2011 service plan, Mother's counsel answered yes; the court asked mother if she had any questions, to which Mother responded no. Mother acknowledged that the October 14, 2009 family service plan had substantially the same services as the September 20, 2011 family service plan.

2. <u>Non-compliance with services</u>. As of January 22, 2010, Mother failed to get into a clean and sober house and to stabilize her medication, despite being told repeatedly. This resulted in her being terminated from drug court, which Mother acknowledged at trial. Mother also failed to do a requested drug screening.

As of February 23, 2010, Mother was minimally compliant with court-ordered services, was against recommendations of the program, refused to move into clean-and-sober living, and chose to reside with a male friend she had just met in Waikiki.

As of August 5, 2010, Mother was found guilty of criminal contempt of court regarding a temporary restraining order, and she was sentenced to one-year probation with the HOPE program, for which a violation could result in being sentenced to one year in prison.

As of August 25, 2010, Mother acknowledged her previous failure to comply, presumably with mental health services. As of November 3, 2010, Mother had not been submitting evidence of attendance in narcotics anonymous and alcoholics anonymous meetings, and the HOPE program drug monitoring revealed that Mother tested positive for alcohol on September 10, 2010 and tested positive for marijuana on October 7, 2010.

As of February 24, 2011, Mother was reportedly homeless. At trial, Mother agreed that she had not followed through on the October 14, 2009 family service plan.

As of September 20, 2011, "due to two no-shows, Mother was discharged on December 15, 2010 from UA testing at Hina Mauka Waipahu, and Mother's "drug issues remain unresolved." Additionally, information reflected that Mother had not engaged in parenting classes, that no psychological evaluation was scheduled because DHS was unable to verify Mother's sobriety for

a minimum of 90 days, that DHS had no information as to Mother's living arrangements, and that Mother had made minimal efforts to maintain contact with DHS.

Mother acknowledged she was supposed to do substance abuse assessment and treatment according to the September 20, 2011 family service plan, but stopped doing the Hina Mauka program because "half of the time [she] was incarcerated."

DHS referred Mother to substance abuse assessment, random drug screening, and parent education. The substance abuse assessments recommended random urinalysis monitoring and reestablishment of mental health services until clinically discharged, compliance with medical treatment for her seizure condition, participation in an intensive outpatient substance abuse treatment program three times a week until clinically discharged, attendance at three sober support groups per week with verification to her case manager, and participation with DHS random drug monitoring. Mother did not complete any of those recommendations. Although Mother complied at some points with random urinalysis, she also had no-shows and had positive results.

As of January 30, 2012, Mother failed to show up for UA testing on January 20, 2012 and January 23, 2012; DHS was unable to confirm compliance with therapy; and Mother made minimal efforts to stay in contact with DHS. Additionally, it appears that Mother was incarcerated on January 23, 2012, according to Mother's probation officer, for testing positive for alcohol. Mother acknowledged that she tested positive for alcohol in September of 2011. Also, as of January 30, 2012, Mother "was not accepted at Queen's Day Program (Dual Diagnosis) as she was assessed by an intake worker, Suzanne, as not motivated."

Mother believes she tested positive for alcohol and marijuana in February, 2012.

Mother apparently failed to attend the court-ordered mediation on April 19, 2012, because Mother was incarcerated for a month for testing positive for alcohol, a probation violation.

Mother used alcohol on May 6, 2012.

At trial, according to the DHS social worker, Mother was referred to therapy because of her history of post-traumatic stress disorder, but prior to Po'ailani, the social worker could not verify with any therapist Mother's progress because they did not receive consents or have any follow through by Mother. DHS referred Mother to parenting classes; Mother did not participate. Mother did not participate in a psychological evaluation. The DHS social worker's testimony reflected that Mother provided very limited cooperation with DHS and did not have regular contact with DHS. To the DHS social worker's knowledge, Mother was not employed and does not have any source of income. Since 1995, according to the DHS social worker, Mother has been involved in at least four or five substance abuse programs involved with the State, and Mother did not complete any of them. At the time of trial, according to the DHS social worker, Mother had completed the assessments, but to his knowledge, had not completed the random UAs, parent education, and he did not receive verification of her getting regular therapy.

Mother did not do the psychological evaluation. Mother acknowledged at trial on May 14, 2012 that she had not cooperated with the social worker in the past.

3.      Mother was aware of dual diagnosis treatment prior to Po'ailani

Mother received a dual diagnosis of both substance abuse and mental health problems from Dr. Jamie Horton, whom Mother last saw in 2007 or 2009. A subsequent therapist, Dawn Tomita also treated Mother based on a dual diagnosis, but Mother was later not accepted into the Queen's Dual Diagnosis Program after being assessed as "not motivated." Mother was aware that she had had a dual diagnosis since 2009.

4.      Mother had counsel and failed to explicitly object prior to trial regarding service plans or the Family Court's finding as to DHS efforts to reunify

The record reflects that Mother had the same counsel from October 16, 2009 through trial. Mother does not assert, and the record does not demonstrate, that Mother objected to the

6

foregoing service plans prior to trial. The Family Court repeatedly found that DHS has made reasonable efforts at reunification. Mother does not assert, and the record does not demonstrate, that prior to trial Mother explicitly objected to the Family Court's findings as to the efforts of DHS toward reunification.

In light of the foregoing, and consistent with In re Doe, 100 Hawai'i at 338, 343-44, 60 P.3d at 288, 293-94, where Mother demonstrated that she was unwilling to participate in DHS services, the Family Court did not clearly err in its FOF 96 and FOF 118 that DHS made reasonable and sufficient efforts to have mother succeed and to reunify, or in its FOF 121 that the service plans were appropriate and comprehensive, considering Mother's repeated inability to comply with services and where Mother failed to timely object prior to trial and could have done so where she was represented by counsel. In re Doe, 100 Hawai'i at 344, 60 P.3d at 294; In re AI, No. CAAP-12-0000390, 2013 WL 511790, 1 (App. Feb. 11, 2013), citing In re Doe, 100 Hawai'i at 344, 60 P.3d at 294; In re M Children, No. CAAP-11-0000153, 2012 WL 171618 (App. Jan. 20, 2012) citing In re Doe, 100 Hawai'i at 343-44, 60 P.3d at 293-94.

B.   Clear and Convincing Evidence Existed That Mother Was Not Presently Willing and Able to Provide MA and H with a Safe Family Home, Even with the Assistance of a Service Plan (FOF 98)

Mother asserts that her current participation in the dual diagnosis treatment and her testimony establishes her willingness to provide the children with a safe family home and to comply with services. Despite that argument, the evidence before the Family Court included all of the foregoing, and the Family Court found Mother's testimony as to her willingness and ability to provide a safe family home to be not credible, and found the testimony of the DHS social worker to be credible.

Mother has not challenged those findings, and they are binding upon this court.[3]

Moreover, it appears that another year or longer would be necessary for Mother to complete services. Regarding the evidence that must exist for termination of parental rights, HRS § 587A-33(a)(2) (Supp. 2012) includes clear and convincing evidence that:

> It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care; ...

MA and H had been in temporary foster care from October, 2009; which, at the time of the termination of Mother's parental rights in May, 2012, exceeded two-and-a-half years.

In light of the clear and convincing evidence aforesaid and the unchallenged credibility finding, the Family Court did not err in its FOF 98.

Consequently, clear and convincing evidence existed that Mother was not presently able to provide the children with a safe family home even with the assistance of a service plan.

C.    The Family Court was Not Wrong in COL 3

Finally, where the Family Court did not err in the findings that Mother contests, its conclusion that Mother "is not presently willing and able to provide [MA] and [H] with a safe family home, even with the assistance of a service plan" was not wrong.

---

[3]    "If a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid." Kawamata Farms v. United Agri Products, 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (citation and internal quotation marks omitted).

For these reasons, the Family Court's May 14, 2012 Order Terminating Parental Rights is affirmed.

DATED: Honolulu, Hawai'i, December 17, 2013.

On the briefs:

Wilfred S. Tangonan
for Mother-Appellant

Mary Anne Magnier
Tiffany K.M. Ige
Deputy Attorneys General
Department of the Attorney General
State of Hawai'i
for Petitioner-Appellee
Department of Human Services

Chief Judge

Associate Judge

Associate Judge